UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
at LONDON

Civil Action No. 14-218-HRW

TERESA LEDFORD,                                                           PLAINTIFF,

v.                              MEMORANDUM OPINION AND ORDER

CAROLYN COLVIN,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.

Plaintiff has brought this action pursuant to 42 U.S.C. §405(g) to challenge a final

decision of the Defendant denying Plaintiff's application for supplemental security income

benefits. The Court having reviewed the record in this case and the dispositive motions filed by

the parties, and being otherwise sufficiently advised, for the reasons set forth herein, finds that

the decision of the Administrative Law Judge is supported by substantial evidence and should be

affirmed.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed her current application for supplemental security income benefits in 2012,

alleging disability beginning in 1998, due to a gun shot wound in her left hand and mental

problems (Tr. 186). This application was denied initially and on reconsideration. Thereafter,

upon request by Plaintiff, an administrative hearing was conducted by Administrative Law Judge

Bonnie Kittinger (hereinafter "ALJ"), wherein Plaintiff, accompanied by counsel, testified. At

the hearing, Jackie Rogers, a vocational expert (hereinafter "VE"), also testified.

At the hearing, pursuant to 20 C.F.R. § 416.920, the ALJ performed the following five-

step sequential analysis in order to determine whether the Plaintiff was disabled:

Step 1: If the claimant is performing substantial gainful work, he is not disabled.

Step 2: If the claimant is not performing substantial gainful work, his impairment(s) must be severe before he can be found to be disabled based upon the requirements in 20 C.F.R. § 416.920(b).

Step 3: If the claimant is not performing substantial gainful work and has a severe impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and his impairments (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is disabled without further inquiry.

Step 4: If the claimant's impairment (or impairments) does not prevent him from doing his past relevant work, he is not disabled.

Step 5: Even if the claimant's impairment or impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

The ALJ issued a decision finding that Plaintiff was not disabled (Tr. 9-19). Plaintiff was 46 years old at the time of the hearing decision and has a 12th grade education (Tr. 186). She has no past relevant work (Tr. 16).

At Step 1 of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the date of her application (Tr. 11).

The ALJ then determined, at Step 2, that Plaintiff suffers from left ring finger amputation, left hip problem and depression, which he found to be "severe" within the meaning of the Regulations (Tr. 11).

At Step 3, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the listed impairments (Tr. 11). In doing so, the ALJ specifically considered Listings 1.02, 1.05, 12.04 and 12.06 (Tr. 11-12).

2

The ALJ further found that Plaintiff has the residual functional capacity ("RFC") to perform a limited range of medium work, with certain restrictions as set forth in the hearing decision (Tr. 12).

 The ALJ finally concluded that these jobs exist in significant numbers in the national and regional economies, as identified by the VE (Tr. 14).

Accordingly, the ALJ found Plaintiff not to be disabled at Step 5 of the sequential evaluation process.

The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the final decision of the Commissioner . Plaintiff thereafter filed this civil action seeking a reversal of the Commissioner's decision. Both parties have filed Motions for Summary Judgment [Docket Nos. 12 and 13] and this matter is ripe for decision.

## II. ANALYSIS

The essential issue on appeal to this Court is whether the ALJ's decision is supported by substantial evidence. "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). If the Commissioner's decision is supported by substantial evidence, the reviewing Court must affirm. *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). "The court may not try the case *de novo* nor resolve conflicts in evidence, nor decide questions of credibility." *Bradley v. Secretary of Health and Human Services*, 862 F.2d 1224, 1228 (6th Cir. 1988). Finally, this Court must defer to the Commissioner's decision "even if there is substantial

evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

On appeal, Plaintiff contends that the ALJ's erred at Step 3 by failing to find that she meets the requirements of Listings 12.04 and 12.06.

The Sixth Circuit Court of Appeals stated in *Herr v. Commissioner of Social Security,* 203 F.3d 388, 391 (6th Cir. 1999), "the burden of proof lies with the claimant at steps one through four of the [sequential disability benefits analysis]," including proving presumptive disability by meeting or exceeding a Medical Listing at step three. Thus, Plaintiff "bears the burden of proof at Step Three to demonstrate that he has or equals an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1." *Arnold v. Commissioner of Social Security,* 238 F.3d 419, 2000 WL 1909386, *2 (6th Cir. 2000), *citing Burgess v. Secretary of Health and Human Services,* 964 F.2d 524, 528 (6th Cir. 1992). If the Plaintiff "can show an impairment is listed in Appendix 1 ("the listings"), or is equal to a listed impairment, the ALJ must find the claimant disabled." *Buress v. Secretary of Health and Human Services,* 835 F.2d 139, 140 (6th Cir. 1987).

"The listing of impairments 'provides descriptions of disabling conditions and the elements necessary to meet the definition of disabled for each impairment." *Arnold,* at **2, quoting *Maloney v. Commissioner,* 211 F.3d 1269, 2000 WL 420700 (6th Cir. 2000). In order for the Plaintiff "to qualify as disabled under a listed impairment, the claimant must meet all the requirements specified in the Listing." *Id.* This must be done by presenting specific medical findings that satisfy the particular Listing. *Sullivan v. Zebley,* 493 U.S. 521, 530-532, (1990). An impairment that manifests only some of the criteria in a particular Listing, "no matter how

4

severely, does not qualify." *Sullivan*, at 530.

Listing 12.04 provides:

> *Affective Disorders*: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied . . . .
> A.   Medically documented persistence, either continuous or intermittent, of one of the following:
> 1.  Depressive syndrome characterized by at least four of the following:
> a.  Anhedonia or pervasive loss of interest in almost all activities; or
> b.  Appetite disturbance with change in weight; or
> c.  Sleep disturbance; or
> d.  Psychomotor agitation or retardation; or
> e.  Decreased energy; or
> f.  Feelings of guilt or worthlessness; or
> g.  Difficulty concentrating or thinking; or
> h.  Thoughts of suicide; or
> I.  Hallucinations, delusions or paranoid thinking; or
> 2.  Manic syndrome characterized by at least three of the following:
> a.  Hyperactivity; or
> b.  Pressure of speech; or
> c.  Flight of ideas; or
> d.  Inflated self-esteem; or
> e.  Decreased need for sleep; or
> f.  Easy distractability; or
> g.  Involvement in activities that have a high probability of painful consequences which are not recognized; or
> h.  Hallucinations, delusions or paranoid thinking; or
> 3.  Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);
> AND
> B.  Resulting in at least two of the following:
> 1.  Marked restriction of activities of daily living; or
> 2.  Marked difficulties in maintaining social functioning; or
> 3.  Marked difficulties in maintaining concentration, persistence or

pace; or

4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medications or psychological support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Ch. III, Pt. 404, Subpt. P. App. 1, 12.04.

Listing 12.06 provides:

Anxiety Related Disorders: In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.

A. Medically documented findings of at least one of the following:

1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:

a. Motor tension; or

b. Autonomic hyperactivity; or

c. Apprehensive expectation; or

d. Vigilance and scanning;

or

2. A persistent irrational fear of a specific object, activity, or

situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or

3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or

4. Recurrent obsessions or compulsions which are a source of marked distress; or

5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;

AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

OR

C. Resulting in complete inability to function independently outside the area of one's home.

20 C.F.R. Ch. III, Pt. 404, Subpt. P. App. 1, 12.06.

In support of her argument, Plaintiff relies upon the opinion of Michele Amburgey, M.A., a licensed clinical psychologist who saw Plaintiff on one occasion in April of 2013.  Ms. Amburgey took a personal and family history, performed a mental status examination and a clinical interview. She diagnosed major depression, Posttraumatic Stress Disorder (PTSD), extremely low verbal comprehension and working memory, borderline perceptual reasoning and processing speed, and mild retardation. (Tr. pg. 322-324). She assessed a current GAF of 51, found psychological issues and social isolation. (Tr. pg. 324). She also determined that claimant would need assistance in managing finances. (Tr. pg. 324). She concluded

claimant was hindered by her hand injury and hip problems. (Tr. pg. 324). She further

found claimant's depression would interfere with her reliability as an employee and

claimant would not be able to maintain a normal pace or adapt to changes in her routine.

(Tr. pg. 324).

      The ALJ gave this opinion little weight and specifically set forth her reasons for doing so,

specifically that Ms. Amburgey saw Plaintiff once and, further, that her opinion was not

supported by other evidence in the record.  Having reviewed the record, the Court finds no error

in this regard.  First, as a one-time examiner, Ms. Amburgey's opinion is not entitled to special

deference.  *See* 20 C.F.R. § 416.927 (length and nature of treatment relationship and

supportability are relevant factors when evaluating opinion evidence).  In addition, as the ALJ

noted, Ms. Amburgey's opinions are entirely at odds with evidence from Plaintiff's treating

psychiatrist and therapists from Kentucky River Community Care, who noted that Plaintiff's

mood and sleep improved with medication and Plaintiff's own reports in May, June, and

September 2012 that she was doing well and "feeling happy" (Tr. 310-14). Furthermore, there is

no medical support for Ms. Amburgey's diagnosis of anxiety with panic attacks, and that

diagnosis appears to be based entirely on Plaintiff's subjective complaints.  Her opinion is not a

proper basis for a finding of presumptive disability at Step 3.

      Moreover, Plaintiff failed to provide sufficient evidence to support a finding that she met

the  specific requirements of marked limitations in at least two domains of functioning. Plaintiff

asserts in her brief that she had marked limitations in her ability to perform daily activities and

marked deficiencies in concentration, persistence, or pace, but she provides no objective medical

evidence to support her contentions.  However, the evidence of record reveals that mental status

examination findings were consistently normal (Tr. 225-65, 294-305, 310-14) and she reported improved mood and sleep when she was taking her medication (Tr. 310-14) . Absent specific findings to support Plaintiff's claims that she has marked mental limitations, her argument has no merit. As such, Plaintiff has failed to carry his burden in proving that she met or equaled Listing 12.04 or 12.06.

Plaintiff also contends that the ALJ "mechanically" applied the Medical-Vocational guidelines to find her disabled without considering her non-exertional impairments and "ignored" her mental impairments. This argument is not only confusing but contrary to the record. With regard to the guidelines, the ALJ did not "mechanically" apply them. Rather, she obtained evidence from the VE to assist her in determining the extent to which Plaintiff's combined impairments impacted her ability to perform basic work-related activities (Tr. 41-45). *See* 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00.

As for Plaintiff's mental impairments, the ALJ did not "ignore" Plaintiff's mental impairments, but considered them in combination with her other impairments and found that she could follow only simple and some detailed (but not complex) instructions and maintain concentration and attention sufficient to perform only simple tasks (Tr. 12). The ALJ also found that Plaintiff should not interact with the public more than occasionally (Tr. 12). As he ALJ found Plaintiff had these and other non-exertional limitations, she properly received evidence from the VE, who identified more than 21,000 jobs in Kentucky that Plaintiff could perform considering her vocational profile and RFC (Tr. 43-44). It is unclear from Plaintiff's brief what additional limitations the record compelled the ALJ to include in her RFC finding.

## III. CONCLUSION

The Court finds that the ALJ's decision is supported by substantial evidence on the record.   Accordingly, it is **HEREBY ORDERED** that the Plaintiff's Motion for Summary Judgment be **OVERRULED** and the Defendant's Motion for Summary Judgment be **SUSTAINED**.  A judgment in favor of the Defendant will be entered contemporaneously herewith.

This /7th day of February, 2016.



Signed By:
*Henry R. Wilholt, Jr.*
United States District Judge